SINGER CASHMAN LLP
   Doug Tilley (SBN 265997)
   dtilley@singercashman.com
   601 Montgomery Street, Suite 1950
   San Francisco, California 94111
Telephone:  (628) 400-3961
Facsimile:   (415) 500-6080
*Attorney for Defendants PeopleConnect, Inc.; PeopleConnect Intermediate LLC; PeopleConnect Holdings, Inc.; PCHI Intermediate, LLC; and PCHI Parent, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHN DLUGOLECKI, an individual,<br><br>     Plaintiff,<br><br>   vs.<br><br>PEOPLECONNECT, INC.; PEOPLECONNECT INTERMEDIATE LLC; PEOPLECONNECT HOLDINGS, INC.; PCHI INTERMEDIATE, LLC; and PCHI PARENT, INC.,<br><br>     Defendants. | Case No.: 2:20-CV-03657-GW-GJS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR DISMISS FOR *FORUM NON CONVENIENS* OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER, TO DISMISS FOR FAILURE TO STATE A CLAIM, AND TO STRIKE**<br><br>Hearing Date:  August 31, 2020<br>Hearing Time:  8:30 a.m.<br>Courtroom:    9D<br>Hon. George H. Wu, *Presiding* |

I.       INTRODUCTION .................................................................................... 1

II.      RELEVANT BACKGROUND ................................................................. 2

    a.    Plaintiff and His Claims ................................................................. 2

    b.    Defendants ...................................................................................... 3

    c.    Plaintiff's Agreements to Arbitrate Claims With Classmates.com ................ 4

     i.    Plaintiff Creates Multiple Classmates.com Accounts, And Agrees To The Terms of Service ........................................................................... 4

     ii.    Plaintiff Repeatedly Agrees To Updated Terms, Including An Arbitration Provision .................................................................... 5

       1.    Plaintiff's 2014 Agreement To Arbitrate ................................. 5

       2.    Plaintiff's 2017 Agreement To Arbitrate ................................. 6

III.     LEGAL STANDARDS ........................................................................... 8

    a.    Motions To Enforce Arbitration (Forum Selection) Clauses .......................... 8

    b.    Motion To Dismiss For Lack Of Jurisdiction .................................... 9

    c.    Motion To Transfer Under 28 U.S.C. § 1404 ................................... 10

    d.    Motion To Strike ........................................................................ 11

IV.     ARGUMENT ......................................................................................... 11

    a.    Plaintiff's Claims Are Subject To Mandatory Arbitration ........................... 11

     i.    The TOS Constitute A Valid, Enforceable Agreement ........................... 11

     ii.    The Parties Clearly And Unmistakably Delegated Questions of Arbitrability To The Arbitrator .................................................... 13

     iii.    The TOS's Arbitration Provision Covers This Dispute ........................... 14

     iv.    This Action Should Be Dismissed In Favor Of Arbitration .................... 15

    b.    Dismissal Is Similarly Required Under *Forum Non Conveniens* ................ 15

Defendants' Memo. ISO Motion to Compel Arbitration or to Dismiss, Transfer, or Strike

i

c.  This Court Lacks Personal Jurisdiction Over Defendants ............................ 17

    i.  Defendants Are Not Subject To General Personal Jurisdiction .................. 18

    ii.  Defendants Are Not Subject To Specific Personal Jurisdiction ................. 19

        1.  Defendants Have Not "Purposefully Directed" Activities at California 19

           a)  Defendants Do Not "Expressly Aim" At California ........................... 20

           b)  Defendants Could Not Have Known Any Alleged Harm Would Be Suffered In California ....................................................................... 21

        2.  Plaintiff's Claims Do Not "Arise Out" Of Acts Directed At California 22

        3.  Any Exercise Of Jurisdiction Would Be Unreasonable ........................ 22

d.  This Action Must Be Transferred To The Western District Of Washington ............................................................................................................... 23

e.  Plaintiff Fails To State A Claim Against The Holding Companies ............. 23

f.  Allegations Concerning Unrelated, Unproven Misconduct By Classmates.com's Former Owner Must Be Stricken ..................................... 24

V.  CONCLUSION ........................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Cases**

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)...........................................................................8

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,*
  571 U.S. 49 (2013) .....................................................................passim

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
  874 F.3d 1064 (9th Cir. 2017)..................................................20, 21

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015)......................................................9, 14

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) .........................................................................10

*Cf. Nanografix Corp. v. Pollard Banknote Ltd.,*
  No. 18-cv-6735, 2019 WL 2240439 (C.D. Cal. Feb. 28, 2019) ..........17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000).............................................................9

*Compare, e.g., Spy Optic Inc. v. AreaTrend, LLC,*
  No. 19-cv-1770, 2020 WL 1849672 (S.D. Cal. Apr. 13, 2020) ..........21

*Creative Tech., Ltd. v. Aztech Sys. PTE,*
  61 F.3d 696 (9th Cir. 1995)...............................................................16

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014)...................................................................10, 19

*Dickey v. Ticketmaster LLC,*
  No. 18-cv-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ..........12, 14

*Doe v. Unocal Corp.,*
  248 F.3d 915 (9th Cir. 2001).............................................................9

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003)...................................................................20, 24

*Farmer v. Ford Motor Co.,*
  No. 07-cv-3539, 2007 WL 4224612 (N.D. Cal. Nov. 28, 2007).........24

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995)...........................................................................8

*Graf v. Match.com, LLC,*
  No. 15-cv-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ..........12

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
  139 S. Ct. 524 (2019) ...................................................................9, 14

*Imageline, Inc. v. Hendricks,*
  No. 09-cv-1870 DSF, 2009 WL 10286181 (C.D. Cal. Aug. 12, 2009)...........21

*In re Facebook Biometric Info. Privacy Litig.,*
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...........................................13

*In re Uber Techs., Inc.*,
  No. 18-cv-3169, 2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) ........................13
*Incorp Servs. Inc. v. Incsmart.Biz Inc.*,
  No. 11-cv-4660, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) .......................21
*Joel Bauer & Assocs. v. Hawkins*,
  No. 18-cv-9887, 2019 WL 4238885 (C.D. Cal. Mar. 25, 2019) ........................12
*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014).........................................................................15
*Katzir's Floor and Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004).........................................................................24
*Kinney v. Youtube, LLC*,
  2018 WL 5961898 (Cal. Ct. App. Nov. 14, 2018) ................................................8
*Legnaioli v. Chrysler Capital, LLC*,
  No. 15-cv-744, 2015 WL 12765468 (C.D. Cal. June 9, 2015)............................15
*Matera v. Google Inc.*,
  No. 15-CV-4062, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......................13
*Mims v. Davison Design & Dev., Inc.*,
  No. 16-cv-92, 2016 WL 10771297 (C.D. Cal. Apr. 14, 2016) ...........................15
*Mobile Tech, Inc. v. InVue Sec. Prod. Inc.*,
  No. 17-cv-7491, 2018 WL 2558390 (C.D. Cal. Jan. 30, 2018)...........................11
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)........................................................................................9, 15
*MySpace, Inc. v. The Globe.com, Inc.*,
  No. 06-cv-3391, 2007 WL 1686966 (C.D. Cal. Feb. 27, 2007) .........................13
*Peterson v. Lyft*,
  No. 16-cv-7343, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018)........................15
*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)...................................................19
*Rodriguez v. Experian Servs. Corp.*,
  No. 15-cv-3553, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) .........................12
*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004)...........................................................................10
*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990)............................................................................9
*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir.1983).......................................................................11, 25
*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)..............................................................................9
*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ..............................................................12

*U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*,
   No. 12-cv-602, 2013 WL 774177 (S.D. Cal. Feb. 28, 2013)...............................24
*U-Haul Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   No. 10-cv-1047, 2011 WL 9111 (D. Ariz. Jan. 3, 2011)....................................25
*United States v. Bestfoods*,
   524 U.S. 51 (1998)...........................................................................................24
*Ventress v. Japan Airlines*,
   486 F.3d 1111 (9th Cir. 2007)........................................................................10
*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................20
*Weimin Chen v. Sierra Trading Post, Inc.*,
   No. 2:18-cv-1581, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ....................8
*West v. Uber Techs.*,
   No. 18-CV-3001-PSG-GJS, 2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ........13

**Statutes**
28 U.S.C. § 1404(a) .....................................................................................10, 23
9 U.S.C. § 2 ..........................................................................................................8
9 U.S.C. § 3 ...................................................................................................8, 16

**Other Authorities**
AAA Comm. R-14....................................................................................................14
AAA Comm. R-7......................................................................................................14
Federal Arbitration Act...........................................................................................8
WRIGHT & MILLER, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) ...........................11

**Rules**
Fed. R. Civ. P. 12(b)(6) .........................................................................................2
Fed. R. Civ. P. 12(f).............................................................................................11

Defendants' Memo. ISO Motion to Compel Arbitration or to Dismiss, Transfer, or Strike

v

## I.  **INTRODUCTION**

Plaintiff John Dlugolecki accuses PeopleConnect, Inc. ("PeopleConnect") and four non-operating holding companies[1] of infringing his copyrights in decades-old photos of Meghan Markle, the Duchess of Sussex and a newsworthy figure of global interest, by displaying them on the social networking site Classmates.com.

Plaintiff's claims fail for a host of reasons, including that he strategically omits facts showing they are time-barred.  Those defects will be taken up in due course.  But they may not be litigated in this Court, as Plaintiff and PeopleConnect agreed *repeatedly* over years that any claims one might assert against the other may be pursued exclusively in arbitration.  They also clearly and unmistakably agreed to delegate threshold matters of arbitrability—that is, "the existence, scope, or validity of the arbitration agreement" as well as "the arbitrability of any claim"—to the arbitrator rather than a court.  Plaintiff may not ignore the commitments he made and "reaffirm[ed]" time and again.  Nor, in light of binding precedent, may this Court relieve him of them.  This matter must be dismissed, and Plaintiff directed to pursue his claims in arbitration.

Even were it to entertain Plaintiff's claims, the Court must still dismiss them.  Among other deficiencies, Defendants are not subject to jurisdiction in California.  PeopleConnect is a Delaware corporation that is headquartered in Seattle and has no California presence whatsoever.  (The other Defendants are non-operating Delaware holding companies with no presence or activities *anywhere*.)  The acts over which Plaintiff brings suit—which were carried out by PeopleConnect or unaffiliated former owners of Classmates.com—were not purposefully directed to California.  Even if he could show otherwise, Plaintiff's claims do not arise out of any California-specific conduct.  If this case belongs in any court at all—and it does not—it must be transferred to the Western District of

---

[1]   Defendants PeopleConnect Intermediate LLC, PeopleConnect Holdings, Inc., PCHI Intermediate, LLC, and PCHI Parent, Inc. are referred to herein as the "Holding Companies."

Washington, where (a) the parties agreed disputes would be venued even if the arbitration provision did not apply, and (b) substantially *all* of the relevant witnesses and documents are located.

Even if Plaintiff could overcome these gating issues, his Complaint must still be trimmed dramatically.  <u>First</u>, he has not sufficiently pleaded any claim against any Holding Company.  His attempt to mash admittedly separate corporate entities into a monolithic "PeopleConnect," without a whiff of plausible factual support, violates "basic tenets" of corporate law.  <u>Second</u>, his efforts to smear PeopleConnect by reference to obviously irrelevant alleged misconduct by prior owners of Classmates.com—the purported commission and resolution of which precede PeopleConnect's involvement in Classmates.com by as much as *nine years*—must be stricken.  They bear literally no relation to either PeopleConnect or the issues in this case.  They would serve only to spawn needless disputes, drive up costs, complicate the proceedings, and confuse the actual issues.

In sum, Plaintiff's Complaint is riddled with procedural and substantive defects.  Fortunately, neither this Court nor the taxpayer need bear the burdens of disposing of his defunct claims, as they belong elsewhere.

## II.    RELEVANT BACKGROUND

### a.    Plaintiff and His Claims[2]

Plaintiff alleges that he is a professional photographer residing in this District.  FAC, ¶ 8.  He alleges that he took several photographs of Meghan Markle, a figure of global interest following her success as an actress and her marriage to Prince Harry of the United Kingdom, when she was in high school. *See id.* at ¶¶ 8, 22, 27.  Plaintiff asserts that those images were published in 1998

---

[2]    While the Court should dismiss or stay this case pending mandatory arbitration for the reasons set forth below, Defendants recite Plaintiff's allegations for purposes of their alternative motions, including to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  In so doing, Defendants do not concede that Plaintiff's allegations are factually or legally correct.

and 1999.  *See id.*  Plaintiff failed to register any claimed copyrights in those images until 2017 and 2018.  *See* FAC, Exhs. C, J, M.  After obtaining registrations in the images he purportedly created decades prior, Plaintiff began a campaign of threatening and occasionally suing companies and individuals for perceived copyright infringement.  *See* C.D. Cal. Nos. 2:18-cv-3905, 9400.

As in those prior cases, Plaintiff claims that Defendants infringe his newly-registered copyrights in certain aged Markle images by displaying them without his consent.  He notably omits that Classmates.com began displaying those images in April 2013—years prior to both Plaintiff's earliest registration and any Defendant's connection to Classmates.com.  Howe Decl., ¶¶ 8, 26; *compare* Tilley Decl., ¶ 2 (Plaintiff was advised of this fact on June 3 and 8) *with* FAC, ¶¶ 22, 27 (June 19 allegation that display began "[a]t a time known to Dlugolecki.").

### b.  <u>Defendants</u>

Defendant PeopleConnect is a Delaware corporation with its sole office in Seattle, Washington.  *See* Howe Decl., ¶ 2.  Neither PeopleConnect nor any other Defendant maintains an office in California, employs any California resident, is registered to conduct business in California, or has designated a California agent for service of process.  *Id.* at ¶¶ 3-7.  Among other businesses, PeopleConnect operates Classmates.com, a social networking service that PeopleConnect has operated since 2016.  *Id.* at ¶ 8; FAC, ¶ 3.  Prior to that time, PeopleConnect had neither any stake in Classmates.com or its then-owner, nor any role in any facet of Classmates.com's operations.  The other Defendants are non-operating Delaware holding companies, and have ***never*** had any involvement in operating Classmates.com.  Howe Decl., ¶ 8.

PeopleConnect offers several services through Classmates.com, including posting class lists for hundreds of thousands of schools across the United States, allowing users to upload and share photos and other content, providing messaging and other social networking functions, helping people plan and conduct physical or

virtual high school reunions, and more.  Classmates.com also displays high school yearbooks going back as far as the 1920's, and maintains a blog wherein users may read about and discuss celebrities, films, and other national or international pop culture topics, including by browsing and commenting upon old photographs. Plaintiff's claims focus exclusively on these latter elements of Classmates.com.

      c.    **Plaintiff's Agreements to Arbitrate Claims With Classmates.com**

          i.    **Plaintiff Creates Multiple Classmates.com Accounts, And Agrees To The Terms of Service**

Plaintiff created a Classmates.com account in 2004, and has been a member of the Classmates.com community ever since.  Howe Decl., ¶ 14, Exh. A.  In creating and using that account, Plaintiff repeatedly and freely bound himself to Classmates.com's Terms of Service (the "TOS").

Since at least as early as 2004, Classmates.com's account registration process has been designed to maximize prospective members' knowledge that they enter into a legally binding contract when they create an account.  Among other efforts, at every step of the registration flow, Classmates.com presented Plaintiff with conspicuous, blue, underlined hyperlinks to the TOS.  Howe Decl., Exh. I at 1-3 (registration flow as it existed in 2004).  At the final step, Classmates.com prompted Plaintiff again to review the TOS, and specifically notified him that "[b]y clicking on the above 'Submit' button, you are agreeing to our Terms of Service." *Id*. at 4; *see also* Howe Decl., Exh. B ("2004 TOS") at 1 (confirming that the TOS "form a binding agreement between Classmates and you.").  Plaintiff completed the registration flow, thus freely binding himself to the TOS pursuant to settled law discussed below. *See* Section IV(a)(i), *infra*.

In accepting the then-effective version of the TOS, Plaintiff agreed that Classmates.com might "revise[] [them] from time to time" and "post the Updated [TOS] on the Website[.]"  2004 TOS at 1.  Plaintiff further agreed that such updates were "effective immediately at the time of posting." *Id*.

ii.      **Plaintiff Repeatedly Agrees To Updated Terms, Including An Arbitration Provision**

1.      **Plaintiff's 2014 Agreement To Arbitrate**

Classmates.com's TOS has been updated several times since Plaintiff initially agreed to them.  Howe Decl., Exhs. C-H (versions in effect since 2004). In January 2014, the TOS was modified to include, among other changes, a mandatory arbitration provision.  *See* Howe Decl., Exh. F ("2014 TOS"), § 14. The 2014 TOS provided that "[t]he parties agree to arbitrate all disputes and claims between them[,]" including but not limited to "Disputes or Claims related in any way to the Services" or "arising out of relating to any aspect of the relationship between us, whether based in … tort, statute… or any other legal theory[.]"  *Id*. The 2014 TOS further provided that "[y]our continued use of the Services following notice [of changes] shall constitute your acceptance of all changes, and each use of the Services constitutes your reaffirmation of your acceptance of these Terms of Service."  *Id.* at Introduction.  The 2014 TOS advised that if a member "do[es] not agree to" such changes, his or her "sole and exclusively remedy will be to terminate your account and use of the Services."  *Id*.

In addition to posting the 2014 TOS to its website, Classmates.com sent Plaintiff and all other registered members an email—bearing subject line "Updated Classmates.com Terms of Service"—specifically alerting them to the inclusion of the arbitration provision.  *See* Howe Decl., Exh. J.[3]  That email summarized the arbitration clause, and linked to a "more thorough description[.]"  *Id.*; *see also* Howe Decl., Exh. K (explanation).  Finally, that email reminded Plaintiff that the TOS "is our agreement with you," and admonished him to "read it in its entirety[.]"  Howe Decl., Exh. J.

---

[3]      While Classmates.com allows members to unsubscribe or otherwise opt-out of receiving certain categories of emails, members are not permitted to opt-out of receiving emails notifying them of changes to the TOS.  *See* Howe Decl., ¶ 22.

Plaintiff continued to log into his Classmates.com account and otherwise avail himself of Classmates.com's services, with full knowledge of these changes and that his conduct constituted and "accept[ed]" and "reaffirm[ed]" his commitments to be bound by them.  *See* Howe Decl., ¶ 15, Exh. A.

## 2.    Plaintiff's 2017 Agreement To Arbitrate

Classmates.com's TOS was next updated in February 2017, and most recently in June 2017.  Howe Decl., ¶ 17, Exh. H ("Current TOS").  The Current TOS reiterates the parties' agreement to arbitrate "any and all disputes and claims" any might seek to assert, including but not limited to those "related in any way to the Services" or "arising out of or relating to any aspect of the relationship between us, whether based in … tort, statute, … or any other legal theory[.]"  *Id.* at ¶ 13.[4]  It states that such arbitration shall proceed under the American Arbitration Association's ("AAA") Rules, whether Consumer or otherwise, and be venued in Seattle, Washington.  *Id*. at ¶ 13(B).  The Current TOS explain that members "have the right to opt-out and not be bound by this arbitration provision[,]" and set forth the procedure for doing so—in which event any claims could be resolved only "by a state or federal court located in King County, Washington[.]"  *Id.* at § 13(D).  Finally, like prior versions, the Current TOS make clear that "continued use of the

---

[4]    The Current TOS prominently alert all members to this arbitration provision. For example, they state in bold capital letters near the very top of the document that "**USE OF THE WEBSITES AND/OR SERVICES REQUIRE YOU TO ARBITRATE ALL DISPUTES ON AN INDIVIDUAL BASIS… SEE SECTION 13 (BELOW).**"  *Id.*  Similarly, at the beginning of the referenced Section 13, the TOS state in bold capital letters:  "**PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT…**"  *Id.*

Services following notice [of changes] shall constitute your acceptance of all changes, and each use of the Services constitutes your reaffirmation of your acceptance of these Terms of Service." *Id.* at Acceptance of Terms. If a member "do[es] not agree to" such changes, that member's "sole and exclusively remedy will be to terminate your account and use of the Websites or Services." *Id.*

As before, PeopleConnect notified Plaintiff of the arbitration provision both by publishing the Current TOS on its website and by emailing Plaintiff directly. *See* Howe Decl., Exh. L. PeopleConnect's email again specifically called out the arbitration provision; linked to a "more thorough description of the changes we have made[;]" stated the date on which the revisions would go into effect; and admonished Plaintiff to read the new TOS "in their entirety." *Id.*; *see also* Howe Decl., Exh. M (description of 2017 changes)

As before, Plaintiff continued to use Classmates.com, with full knowledge that doing so "reaffirm[ed]" his "acceptance" of those changes. In fact, while engaged in active litigation over the same images and represented by the same counsel, Plaintiff continued to scour Classmates.com specifically in furtherance of this action. *See* Tilley Decl., Exh. A ("Mr. Dlugolecki visited your client's site on a few occasions in recent years to investigate possible infringements, especially in connection with his then-pending Poppel/ABC litigation[.]").[5]

At no time has Plaintiff sought to opt-out of or object in any way to the various arbitration provisions to which he agreed over the years. Howe Decl., ¶ 24. He similarly has never terminated his Classmates.com account. *Id.* at ¶ 23. Rather, he has continued to use Classmates.com at least as recently as 2018— including in furtherance of bringing this very action. Tilley Decl., Exh. A.

---

[5]   Plaintiff filed his case against Seth Poppel et al. on May 10, 2018. *See* C.D. Cal. No. 2:18-cv-3905, Dkt. No. 1.

## III.   LEGAL STANDARDS

### a.   Motions To Enforce Arbitration (Forum Selection) Clauses

Parties may agree to refer any disputes between them to a specific forum, including arbitration.  Where one party initiates an action elsewhere, its counterparty may enforce the parties' agreement through a motion to compel pursuant to the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 3, or to dismiss for *forum non conveniens*.  The Court looks to ordinary contract principles—offer, acceptance, and consideration—in determining whether parties have agreed to refer claims to arbitration or another other forum.  *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[6]  If such an agreement exists, and its language reaches the dispute in issue, the matter may be pursued only in the specified forum in "in all but the most exceptional cases."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013).

Arbitration agreements are subject to even greater deference where, as here, they invoke the FAA.  *See* 9 U.S.C. § 2 (directing that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  The FAA reflects Congress's intent to enforce agreements to arbitrate and affirms the "liberal policy favoring arbitration[.]"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In ruling on a motion to compel arbitration, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answer to

---

[6]   Under all applicable versions of the TOS, Washington law governs the relationship between the parties.  *See* Howe Decl., Exhs. C-H.  While Plaintiff might contend that California law should apply, it makes no difference for present purposes: both states' laws routinely bind users to website Terms.  *See, e.g.*, *Kinney v. Youtube, LLC*, 2018 WL 5961898, at *6 (Cal. Ct. App. Nov. 14, 2018) (collecting California cases); *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-cv-1581, 2019 WL 3564659, at *3 (W.D. Wash. Aug. 6, 2019) (Washington law).

both is yes, the matter must be dismissed or stayed pending arbitration.  *Id.*; *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high," and agreements to arbitrate "are to be rigorously enforced."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (directing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The Court's inquiry is even more limited where, as here, the parties delegate questions of arbitrability to the arbitrator, such as by invoking AAA Rules. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In such a case, the Court "possesses no power to decide the arbitrability issue" and must refer the matter to AAA in all instances, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

### b. <u>Motion To Dismiss For Lack Of Jurisdiction</u>

Plaintiff bears the burden of establishing that each Defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction would comport with fairness principles and due process.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Plaintiff must come forward with admissible evidence containing facts sufficient to justify personal jurisdiction. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  While the Court must accept any uncontroverted evidence offered by Plaintiff, and resolve conflicting evidence in Plaintiff's favor, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]"  *Dlugolecki v. Poppel, et al.*, C.D. Cal. No. 2:18-cv-3905, Dkt. 51 (Order granting motion to dismiss) ("*Dlugolecki*") at 3-4.

Personal jurisdiction over a non-resident may be either general or specific. "General personal jurisdiction exists where a nonresident defendant's affiliations with the forum state are so continuous and systematic as to render them essentially at home in the forum state." *Dlugolecki*, at 4 (quotations and citations omitted).

"The two places where a corporation is 'essentially at home' and therefore subject to general jurisdiction are its place of incorporation and its principal place of business." *Id*. General jurisdiction will be found elsewhere only in an "exceptional case." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

Where general jurisdiction is lacking, specific jurisdiction in a copyright case exists only where Plaintiff adduces sufficient evidence to show that (a) the non-resident "purposefully directed" its activities at the forum state, <u>and</u> (b) Plaintiff's claim "arises out of or relates to" such forum-directed activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiff can make such a showing, Defendant must make a "compelling case" that it would be "unreasonable" to exercise jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985).

### c.   Motion To Transfer Under 28 U.S.C. § 1404

As an alternative to dismissal, the Court may transfer a case to another forum for "the convenience of the parties, witnesses, and in the interest of justice." 28 U.S.C. § 1404(a). In evaluating a transfer motion, the Court considers whether the action might have been brought in the potential transferee court. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007). If so, the Court considers the convenience of the parties and witnesses, by reference to "(1) the convenience of the parties and the witnesses; (2) the location where the alleged events in the lawsuit took place; (3) the relative ease of access to sources of proof; (4) the plaintiff's choice of forum; (5) the pendency of related litigation in the transferee forum; (6) the relative congestion of the two courts; (7) the public interest in the local adjudication of local controversies; and (8) the relative familiarity of the two courts with the applicable law." *Mobile Tech, Inc. v. InVue Sec. Prod. Inc.*, No. 17-cv-7491, 2018 WL 2558390, at *2 (C.D. Cal. Jan. 30, 2018).

### d.     Motion To Strike

Federal courts are authorized to strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Such motions are properly directed to, among others, allegations that "ha[ve] no essential or important relationship to the claim for relief[;]" "do not pertain, and are not necessary, to the issues in question[;]" or "improperly casts a derogatory light on" a party.  WRIGHT & MILLER, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.).

## IV.     ARGUMENT

### a.     Plaintiff's Claims Are Subject To Mandatory Arbitration

#### i.          The TOS Constitute A Valid, Enforceable Agreement

Plaintiff explicitly assented to Classmates.com's TOS when he created an account in 2004.[7]  After clicking through five single-screen pages containing a conspicuous, blue, underlined hyperlink to the TOS (and often little else), Plaintiff was shown a "Submit" button and a directly adjacent disclosure stating that "[b]y clicking on the above 'Submit' button, you are agreeing to your Terms of Service[,]" which were again hyperlinked in conspicuous, blue, underlined font.  Howe Decl., Exh. I.  Plaintiff clicked that button; indeed, he could not have created an account without doing so.  *See* Howe Decl., ¶ 19.  This Court and others routinely hold that users bind themselves to website Terms by doing precisely this.  *See, e.g.*, *Dickey v. Ticketmaster LLC*, No. 18-cv-9052, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (compelling arbitration where "Sign Up" button was adjacent to a disclosure saying that clicking constituted asset to Terms, which were hyperlinked in blue font); *Rodriguez v. Experian Servs. Corp.*, No. 15-cv-3553,

---

[7]      Plaintiff appears to admit as much.  *See* FAC, ¶ 7 (alleging that TOS are "applicable to 'members' of Classmates.com[.]").

2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (compelling arbitration where "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment, which stated, 'By clicking the button above ... you agree to our Terms of Use.'"); *Graf v. Match.com, LLC*, No. 15-cv-3911, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (users agreed to Terms and arbitration "when they clicked on a 'Continue' where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) (compelling arbitration where plaintiff "was required to and did click on an 'Accept' button directly above a statement that clicking on the button served as assent to the [TOS] along with a blue hyperlink directly to the [TOS].").

Plaintiff similarly agreed to the 2014 TOS and Current TOS, including the arbitration provisions set forth in each.  Classmates.com notified Plaintiff of each update in multiple ways.  First, Classmates.com posted the new TOS versions to the site.  Under the TOS in effect at the relevant times, this alone provided sufficient notice to Plaintiff that continued use constituted acceptance of those terms.[8]  Second, Classmates.com emailed Plaintiff each time to ensure he had full notice of both the TOS updates and the legal effect of his continued use of the site.

___

[8]    *See, e.g.*, *Joel Bauer & Assocs. v. Hawkins*, No. 18-cv-9887, 2019 WL 4238885, at *1-2 (C.D. Cal. Mar. 25, 2019) (enforcing updated TOS where, as here, a prior version of the TOS provided that defendant might update such TOS "from time-to-time[;]" a user's "continued use of the Services following such updates constitutes your acceptance of the same[;]" and in the event a user did not agree to such changes, his or her remedy was to "terminate this Agreement in accordance with the Termination section below.") (*citing Matera v. Google Inc.*, No. 15-CV-4062, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (users bound by updated Terms upon posting, when previously agreed-to Terms notified users that updated terms would be posted and if they did not consent they should discontinue services); *MySpace, Inc. v. The Globe.com, Inc.*, No. 06-cv-3391, 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007) (enforcing new Terms where prior version provided that modifications were effective on posting)).

Classmates.com's emails informed Plaintiff that the TOS had been updated; specifically alerted him to the arbitration provision; linked to "more thorough description[s]" of the changes made; reminded Plaintiff that the TOS, as revised, constituted a legal agreement; encouraged Plaintiff to read the TOS "in its entirety[;]" and provided links to the new and prior versions of the TOS so that Plaintiff could compare them.  Howe Decl., Exhs. J-M.

After receiving such notice, Plaintiff continued to use Classmates.com—*including for purposes of this very lawsuit*.  Tilley Decl., Exh. A.  This District and others within this Circuit have held repeatedly that users bind themselves to new Terms (including arbitration provisions) where they receive notice of updates to website Terms, are informed that the revised Terms constitute a legal agreement, and continue to access the covered website or service.  *See, e.g.*, *In re Uber Techs., Inc.*, No. 18-cv-3169, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) (compelling arbitration); *West v. Uber Techs.*, No. 18-cv-3001, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (same); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

### ii.    The Parties Clearly And Unmistakably Delegated Questions of Arbitrability To The Arbitrator

Because Plaintiff agreed to the TOS, the Court must send this case to arbitration. This is true even if Plaintiff contends that his claims do not fall within the scope of the arbitration provisions, or that the clause is unenforceable for any reason, because the arbitration clause "clearly and unmistakably" refers such questions to the arbitrator rather than the Court.  Such a delegation must be respected in every instance.  *See Schein*, 139 S. Ct. at 529, 531.

Here, the Current TOS directs that any arbitration is to proceed under AAA Rules.  Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any

claim[.]"  AAA Comm. R-7; AAA Comm. R-14.  It is well-settled in this Circuit and beyond that invocation of AAA Rules "clearly and unmistakably" requires an arbitrator, rather than a court, to decide arbitrability.  *Brennan*, 796 F.3d at 1130 (so holding and noting "consensus" among sister Circuits).  "[T]he Court therefore may not override the parties' choice to delegate questions of arbitrability to the arbitrator."  *Dickey*, 2019 WL 9096443, at *8.

### iii.  <u>The TOS's Arbitration Provision Covers This Dispute</u>

Because the Current TOS is a valid agreement that clearly and unmistakably delegates questions of arbitrability to the arbitrator, the Court's analysis must end here.  But even if the law permitted the Court to rule on arbitrability or if a "wholly groundless" exception survived *Schein*—neither is true—there is no debate that the plain text of the parties' arbitration agreement covers this dispute.  Since 2014, the TOS to which Plaintiff repeatedly bound himself has required arbitration of "all" claims any party might wish to assert, specifically including those "related in any way to the Services" or "arising out of or relating to any aspect of the relationship between us, whether based in … tort, statute, … or any other legal theory[.]"  Current TOS, ¶ 13; *accord* Howe Decl., Exhs. F, G (prior arbitration clauses).

Even were this language somehow unclear—in which case the law still requires that this Motion be granted[9]—the circumstances of Plaintiff's continuing use of Classmates.com confirms his intent to submit this dispute to arbitration.  Again, Plaintiff **admits** that he used Classmates.com ***specifically to bring this suit***.  He knew at that time—and, indeed, for many years prior—of both the arbitration provision and that continued use "accept[ed]" and "reaffirm[ed]" his agreement to the same.

Referring this case to arbitration thus comports with not only the law, the plain text of the TOS, and the parties' intent, but also basic principles of fairness

---

[9]  *See, e.g.*, *Moses H. Cone*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

1
2
3

and commonsense.  To allow Plaintiff to use Classmates.com specifically to bring a suit, while relieving him of the voluntary and repeated commitments he made in as a pre-condition of such use, would be unfair and perverse.

4

### iv.    This Action Should Be Dismissed In Favor Of Arbitration

5
6
7
8
9
10
11
12

While the Court may stay an action pending arbitration, it is authorized to "dismiss it outright when, as here, [] all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014); *e.g.*, *Peterson v. Lyft*, No. 16-cv-7343, 2018 WL 6047085, at *6 (N.D. Cal. Nov. 19, 2018) (dismissing case); *Mims v. Davison Design & Dev., Inc.*, No. 16-cv-92, 2016 WL 10771297, at *4 (C.D. Cal. Apr. 14, 2016) (same); *Legnaioli v. Chrysler Capital, LLC*, No. 15-cv-744, 2015 WL 12765468, at *4 (C.D. Cal. June 9, 2015) (same).  It should do so.

13

### b.    Dismissal Is Similarly Required Under *Forum Non Conveniens*

14
15
16
17
18
19
20
21
22
23

Even if the arbitration provision did not apply to this dispute—and it does—dismissal is still required under the doctrine of *forum non conveniens*.  *See Atlantic Marine*, 571 U.S. at 60.  Had Plaintiff opted-out of that provision, or could otherwise avoid its effect, he ***still*** would be required to pursue his claims exclusively in a "state or federal court located in King County, Washington." Current TOS, § 13(D).  Supreme Court jurisprudence requires that Plaintiff's choice of a different forum be given "no weight[,]" and that the parties' contractual choice of venue "be given controlling weight in all but the most exceptional cases."  *Atlantic Marine*, 571 U.S. at 63.  Thus, whether under 9 U.S.C. § 3 or *forum non conveniens* principles, this action must be dismissed.

24
25
26
27
28

In evaluating a motion to dismiss for *forum non conveniens*, the Court looks first to whether the agreed-upon venue is "an adequate alternative forum[,]" and, if so, whether the balance of certain private and public interest factors favor dismissal.  *See, e.g., Creative Tech., Ltd. v. Aztech Sys. PTE*, 61 F.3d 696, 699 (9th Cir. 1995).  Both AAA and the federal courts of King County, Washington are

adequate alternative fora.  *See id*. at 701 ("This requirement is generally satisfied if the defendant is amenable to service of process in the alternative forum.").  Here, PeopleConnect has agreed to submit to AAA jurisdiction, and is subject to jurisdiction and service in Washington because it is headquartered there.  Moreover, the Current TOS provides that the arbitrator may award "any relief or remedy that the party could have received in court[.]"  Current TOS, § 13(B)(iv).

It is similarly clear that the private and public interest factors sharply favor dismissal.  As to the <u>private interest</u> factors, the Supreme Court directs that because Plaintiff agreed to pursue his claims in a particular forum, the Court "***must*** deem the private-interest factors to weigh ***entirely*** in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64 (emphases added).  Even were the Court to consider such factors—and it should not—they require dismissal.  Other than Plaintiff (who alleges residency within the District), PeopleConnect's investigation to date indicates that substantially all of the party and third party witnesses with relevant knowledge are based in Washington State.  Such witnesses include not only current PeopleConnect employees, but also former or departing personnel and other third parties who are knowledgeable concerning the operation of Classmates.com, how Classmates.com receives images for display, non-privileged aspects of PeopleConnect's copyright compliance efforts, the manner and timing of the displays of the Markle images at issue in this case, the (lack of) recoverable profits attributable to the alleged infringement, the nature of the Classmates.com "blog" accused by Plaintiff, and other pertinent topics.[10]  Moreover, substantially ***all*** of the documentary evidence relevant to this dispute is based in Washington State.  For these reasons, the factors looking to "the residence of the parties and the witnesses," "the forum's convenience to the litigants," "access to physical evidence and other sources of proof," "whether unwilling witnesses [such as

---

[10]     Particularly given the global COVID-19 pandemic, it may be assumed that none of these party or third party witnesses will want to travel from Washington to California for purposes of this case.

Defendants' Memo. ISO Motion to Compel Arbitration or to Dismiss, Transfer, or Strike

- 16 -

relevant former personnel and other third parties] can be compelled to testify" at trial, and "the cost of bringing witnesses to trial" all strongly favor holding this litigation in Washington.  *Cf. Nanografix Corp. v. Pollard Banknote Ltd.*, No. 18-cv-6735, 2019 WL 2240439, at *4 (C.D. Cal. Feb. 28, 2019) (discussing factors in related § 1404 transfer context, and granting motion).  The remaining factors—the enforceability of any judgment, and any other "practical" considerations promoting "easy, expeditious, and inexpensive" resolution—either favor proceeding in Washington because PeopleConnect has no assets in California (such that a separate Washington State action may be necessary were Plaintiff to secure a judgment) or are neutral.

As the *Atlantic Marine* Court explained, public interest factors alone "will rarely defeat" a defendant's entitlement to proceed in the agreed-upon venue.  571 U.S. at 64.  This is true here, as such factors either favor dismissal or are neutral.  First, while this Court and the Western District of Washington are both familiar with federal copyright law, the latter is more familiar with the Washington law called for by the TOS.  Second, the Western District of Washington has a shorter projected time to trial than this District.[11]  (This matter is likely to reach final adjudication faster before AAA than in either Court and, moreover, proceeding there would eliminate any possible burden on "local courts and juries.").  Next, California and Washington have comparable interests in this suit, inasmuch as each seeks to protect and provide relief to its residents from both alleged tortious acts and unmeritorious claims.  For this same reason, there is comparable risk in either jurisdiction of incurring "costs … unrelated to a particular forum."

### c.    This Court Lacks Personal Jurisdiction Over Defendants

While the Court should dismiss or stay this action in light of the parties' contractual agreements, to the extent it determines both that it has the power to

---

[11]    *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf (Federal Case Management Statistics Report, March 2020).

1  adjudicate arbitrability and that Plaintiff's claims are non-arbitrable, the Court
2  must nevertheless dismiss this suit because it lacks personal jurisdiction over
3  Defendants.  Plaintiff cannot carry his burden to show otherwise.  On the contrary,
4  all of his contentions are demonstrably false, are legally irrelevant, and/or have
5  already been rejected by this Court in prior litigation.

6         i.      **Defendants Are Not Subject To General Personal**
7                **Jurisdiction**

8        Plaintiff cannot show that any Defendant exists under California law or
9  maintains its principal place of business in California.  *See Dlugolecki*, at 4.  Each
10  Defendant is a Delaware corporation or LLC.  Howe Decl., ¶¶ 2-3.  None
11  maintains ***any*** office—much less a principal office—in California, or employs
12  personnel here.  *Id.* at ¶¶ 4, 5.[12]  PeopleConnect's sole office is in Seattle, and the
13  other entities are holding companies with no physical offices at all.  None of them
14  is even registered to do business in California.  *Id*. at ¶ 7.

15        Plaintiff fails to show that this is an "exceptional case" warranting an
16  exercise of jurisdiction.  *Daimler*, 571 U.S. at 139 n.19.  He asserts only that
17  Defendants are subject to jurisdiction because a "prior owner" of Classmates.com
18  "admitted" that it did business within the District.  FAC, ¶ 6.  Plaintiff is incorrect.
19  That allegation appears to refer to an Answer filed in 2011 by Memory Lane, Inc.
20  and United Online, Inc.—both of which maintained an office within this District.
21  *See* C.D. Cal. No. 8:11-cv-940, Dkt. No. 33, ¶ 7 (Answer); *see also* RJN, Exhs. A,
22  B (Memory Lane and United Online Registrations filed with Cal. Sec. of State).
23  That is not true of any Defendant here.  Moreover, as Plaintiff admits, this
24  purported admission was made ***four years before*** PeopleConnect's parent company
25  acquired Classmates.com.  FAC, ¶ 3.  Notably, more than a year prior to that
26  acquisition, Memory Lane surrendered its registration to conduct business in

27
28  [12]    No Defendant is or has been associated with the "San Rafael" office referenced by Plaintiff.  *See* FAC, ¶ 6.  That entity appears to be maintained by an unrelated entity, operating in an unrelated business.

California.  *See* RJN, Exh. C (7/24/14 Surrender filed with Cal. Sec. of State). These facts—which were publicly available yet concealed from the Court—defeat Plaintiff's effort to exercise general jurisdiction here.  PeopleConnect cannot be held to an "admission" made years ago by unaffiliated entities based on facts that ceased to be true long before any Defendant had any connection to Classmates.

Plaintiff's case for general or specific jurisdiction over the Holding Companies—that they are part of a multi-layered ownership structure—is without merit.  FAC, ¶¶ 1-2.  "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  Plaintiff does not allege (much less plead plausible facts to support) that any Defendant other than PeopleConnect directs or even participates in the alleged infringement, or that any Defendant is the alter-ego or agent of any other.  Rather, he breezily treats all Defendants as a singular "PeopleConnect" entity.  This ignores both the fact that no Holding Company has *ever* participated in the operation of Classmates.com, and the "basic tenet of American corporate law [] that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474 (2003) (also confirming that a corporate parent "does not own or have legal title to" either the assets or the subsidiaries of a subsidiary).

> ii.  <u>**Defendants Are Not Subject To Specific Personal Jurisdiction**</u>
>
>> 1.  <u>**Defendants Have Not "Purposefully Directed" Activities at California**</u>

Plaintiff's specific jurisdiction case fails at the outset because PeopleConnect has not purposefully directed its activities at California.  To carry his burden, Plaintiff must show that PeopleConnect "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant[s]

know[] is likely to be suffered in the forum state." *Dlugolecki*, at 6 (alterations in original, citations omitted).  Plaintiff cannot satisfy the second or third prong.

           a)      <u>Defendants Do Not "Expressly Aim" At California</u>

Plaintiff must show that California is the "focal point" of both the alleged infringement and claimed harm.  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070-71 (9th Cir. 2017).  He cannot do so.

Plaintiff argues that he is a resident of this District, the Markle images in question were created here, the relevant yearbooks were published here, and Ms. Markle lived and lives here.  FAC, ¶¶ 1, 8, 22, 27.  Plaintiff presented substantially identical allegations to this Court two years ago.  *Dlugolecki*, at 7.  The Court rejected them as "insufficient to establish personal jurisdiction."  *Id*. at 7-8 (citing *Walden v. Fiore*, 571 U.S. 277 (2014), and *Axiom Foods*).  It should do so again.

Plaintiff adds a single debatably "new" allegation:  that PeopleConnect "solicit[s] and contract[s] with 'members' and advertisers based in this State and district[.]"  FAC, ¶ 6.  But as this Court previously explained to him, "the analysis considers the defendant's contacts with the forum itself not the defendant's contacts with people who reside there."  *Dlugolecki*, at 7.  Applying the proper standard, and treating Plaintiff's superficial and conclusory assertion as just that, the facts make clear that PeopleConnect does not direct its activities at California.

PeopleConnect offers a uniform, national service through Classmates.com. The features and content available to users in California are precisely the same as those available to users in Maine.  PeopleConnect does not offer or sell any California-specific products or services.  It does not distribute products through any California-specific channel.  It does not engage in any California-specific advertising.  It is not registered to do business in California.  It has not designated an agent for service of process in California.  None of its personnel regularly travel to California on Classmates.com business.  Howe Decl., ¶¶ 2-12; *compare, e.g.*, *Spy Optic Inc. v. AreaTrend, LLC*, No. 19-cv-1770, 2020 WL 1849672, at *8 (S.D.

Cal. Apr. 13, 2020) (no express aiming under similar circumstances) *and Imageline, Inc. v. Hendricks*, No. 09-cv-1870 DSF, 2009 WL 10286181, at *3, 5 (C.D. Cal. Aug. 12, 2009) (no express aiming even where 10% of Defendants' sales over an eight-year period were made to California residents) *with, e.g., Incorp Servs. Inc. v. Incsmart.Biz Inc.*, No. 11-cv-4660, 2012 WL 3685994, at *7 (N.D. Cal. Aug. 24, 2012) (finding express aiming where website "offer[ed] California-specific services to California consumers (including, California registered agent services and California corporate formation services)" and "contains 218 different web pages that offer California-specific services or otherwise discuss California.").

It simply cannot be said that California was the "focal point" of any PeopleConnect conduct relating to Ms. Markle or otherwise. *Axiom Foods*, 874 F.3d at 1070-71 (affirming dismissal in case concerning an email to 343 recipients, including 10 California residents and 55 with California companies). Ms. Markle is a globally-recognized figure who is of just as much interest (if not more) in England, other Commonwealth nations, and elsewhere in the United States as in California. To the extent Plaintiff or any other person based in California viewed any offending Markle image on Classmates.com—a data point that PeopleConnect does not track because it is not important to its business, *see* Howe Decl., ¶10— that is mere happenstance, not the result of any express aiming by PeopleConnect.

        b)    <u>Defendants Could Not Have Known Any Alleged Harm Would Be Suffered In California</u>

Even if Plaintiff could show express aiming—and he cannot—his bid to establish jurisdiction still fails because he cannot show that Defendants knew any harm would likely be felt in California. At the time Classmates.com's **prior owner** first posted the Markle images in 2013—approximately 15 years after they were first published, and four years before Plaintiff's earliest registration—there was no basis to believe that doing so would harm anyone in California. Nor, when

PeopleConnect began operating Classmates.com years later, was there any reason to suspect that continued use of those images might cause harm in California.

### 2.    Plaintiff's Claims Do Not "Arise Out" Of Acts Directed At California

Plaintiff's attempt to establish jurisdiction over Defendants fails for the independent reason that his claims do not "arise out of" any California-directed activity.  "Under this test, the question is: but for [] Defendants' conduct in California, would Plaintiff's claim have arisen?"  *Dlugolecki*, at 6-7.  The answer (assuming *arguendo* that Defendants' use of the Markle images is infringing) is yes:  given the nationwide reach of the Copyright Act, Plaintiff's claims would still lie even if Classmates.com were viewable exclusively by users outside California.

### 3.    Any Exercise Of Jurisdiction Would Be Unreasonable

Even could Plaintiff carry his burden on the first two prongs, PeopleConnect is still entitled to dismissal because the "reasonableness" factors weigh decisively against exercising jurisdiction.  First, as set forth above, PeopleConnect's "purposeful injection into the forum" is minimal, if not non-existent.  Second, litigating in this forum would impose unnecessary burdens on PeopleConnect.  All of the relevant PeopleConnect personnel and records are based in Washington.  Even before the COVID pandemic, such personnel rarely, if ever, traveled to this District for Classmates.com business.  Howe Decl., ¶ 6.  Similarly, because all relevant PeopleConnect documentation is maintained in Seattle, it would be "most efficient" to litigate there.  Fourth, as already explained, the Western District of Washington is an adequate alternative forum.  The remaining factors—the extent of conflict with the sovereignty of Washington, as well as the states' interest in adjudicating the dispute conveniently and effectively—are neutral.

### d. <u>This Action Must Be Transferred To The Western District Of Washington</u>

If the Court determines that it may properly exercise jurisdiction over PeopleConnect, it should still transfer this matter to the Western District of Washington under 28 U.S.C. § 1404(a).  There is no dispute that this action could have been brought in that Court, where venue as well as personal and subject matter jurisdiction all are proper.  Moreover, to the extent convenience factors may be considered at all in light of *Atlantic Marine* and the parties' agreement vesting exclusive jurisdiction in Washington courts, those factors favor transfer.[13]  The only factor that arguably favors proceeding in this District—Plaintiff's choice of forum—should be given minimal weight, if any, because (a) Plaintiff already agreed to pursue his claims in Washington, and (b) this District's sole cognizable connection to this case is the mere fact of Plaintiff's residence.  *See, e.g.*, *Farmer v. Ford Motor Co.*, No. 07-cv-3539, 2007 WL 4224612, at *2 (N.D. Cal. Nov. 28, 2007) ("[W]here the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum.").

### e. <u>Plaintiff Fails To State A Claim Against The Holding Companies</u>

For the many reasons set forth above, the Court need not and should not reach the sufficiency of Plaintiff's FAC.  But if it does, it must at a minimum dismiss all claims against the Holding Companies for failure to state a claim.

As confirmed by his original Complaint, Plaintiff's claims focus on the actions of PeopleConnect, Inc.  *See generally* Dkt. 1 (identifying, but declining to sue, PeopleConnect's holding company).  While his FAC names PeopleConnect's corporate parent, grandparent, great-grandparent, and great-great-grandparent,

---

[13]     Several factors—the convenience of parties, location of witnesses, ease of access to proof, lesser congestion in Washington, and the courts' equal interests in this dispute and familiarity with applicable law—are discussed above in Section IV(b).  They need not be rehashed here, except to note that they show that this case is more efficiently and conveniently venued in Washington, as the parties agreed.

Plaintiff does not allege (much less plead plausible facts to show) that any Holding Company is liable to him under any theory.  This ignores the "basic tenet of American corporate law [] that a corporation and its shareholders are distinct entities." *Dole Food,* 538 U.S. at 474 (also confirming that a corporate parent "does not own or have legal title to" either the assets or the subsidiaries of a subsidiary).  Dismissal is required where, as here, a plaintiff fails either to "properly allege liability for [a parent corporation] under an alter ego theory or demonstrate that each entity is liable for its own role" in the alleged wrongdoing. *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*, No. 12-cv-602, 2013 WL 774177, at *5 (S.D. Cal. Feb. 28, 2013) (citing *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004)); *see also United States v. Bestfoods,* 524 U.S. 51, 61 (1998) (observing that corporate separateness insulates a parent corporation from liability created by its subsidiary); *U-Haul Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., No. 10-cv-1047, 2011 WL 9111, at *4 (D. Ariz. Jan. 3, 2011) (dismissing claims against parent where plaintiff failed to allege facts concerning parent's "participation" in conduct and relied on mere ownership of subsidiary).

### f. Allegations Concerning Unrelated, Unproven Misconduct By Classmates.com's Former Owner Must Be Stricken

To the extent the Court determines it may test the propriety of Plaintiff's FAC—and, again, it should not—it must strike Plaintiff's incendiary allegations concerning unrelated, years-old allegations that have literally nothing to do with either PeopleConnect or the subject matter of this case.  FAC, ¶¶ 13-17.

Plaintiff falsely asserts—based on multiple levels of hearsay, no less—that "PeopleConnect has a history of disregard for and violation of the legal rights of others[.]"  FAC, ¶ 13.  It is obvious from the face of Plaintiff's pleading that those allegations have no bearing whatsoever on this case.  Among other concessions of irrelevance, Plaintiff admits that the alleged misconduct (issues with account

management and marketing communications) bears zero relationship to the subject matter of this case, and predated PeopleConnect's relationship with Classmates.com by as much as **nine years**.  *Id.* at ¶¶ 13-16.[14]  Plaintiff also recognizes that those irrelevant legal disputes were resolved by settlements in which the prior owner of Classmates denied any liability.  *Id.*

These prejudicial smear tactics are precisely what Rule 12(f) exists to defeat. *See, e.g.*, *Sidney-Vinstein*, 697 F.2d 880 at 885.  They have no possible relationship to the issues in this case.  If permitted to remain in Plaintiff's Complaint, they would only confuse the issues and complicate proceedings.  Among other evils, Plaintiff will hold out these allegations as a basis to seek burdensome, irrelevant, and disproportionate discovery in hopes of harassing PeopleConnect and driving up costs to increase perceived settlement leverage—all to the prejudice of PeopleConnect, the Court's resources, and the speedy administration of this case. They must be stricken.

## V.   CONCLUSION

For the foregoing reasons, the case must be dismissed, and Plaintiff directed to pursue his claims in arbitration.  Defendants' Motion should be granted in full.

Dated:  July 20, 2020                     Respectfully submitted,

SINGER CASHMAN LLP

By:_____
Doug Tilley
SINGER CASHMAN LLP
*Attorneys for Defendants PeopleConnect, Inc.; PeopleConnect Intermediate LLC; PeopleConnect Holdings, Inc.; PCHI Intermediate, LLC; and PCHI Parent, Inc.*

---

[14]   Plaintiff conceals that even the referenced "injunctions" expired **more than a year** prior to any conceivable nexus between Classmates.com and any Defendant. W.D. Wash. No. 2:09-cv-104, Dkt. No. 38.