UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3657-GW-GJSx | Date | November 9, 2020 |
|---|---|---|---|
| Title | *John Dlugolecki v. PeopleConnect, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Evan A. Blair | Stephan Choo |

**PROCEEDINGS:** **TELEPHONIC HEARING ON DEFENDANTS' MOTION TO COMPEL ARBITRATION OR DISMISS FOR FORUM NON CONVENIENS OR, IN THE ALTERNATIVE, TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER, TO DISMISS FOR FAILURE TO STATE A CLAIM, AND TO STRIKE [30]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court grants Defendants' motion to compel and stays the case pending the decision as to arbitration.

A status conference is set for June 28, 2021 at 8:30 a.m. Parties are to file a joint status report by June 23, 2021.

|  | : | 02 |
|---|---|---|
|  | Initials of Preparer | JG |

*Dlugolecki v. PeopleConnect, Inc., et al.*; Case No. 2:20-cv-03657-GW-(GJSx)
Tentative Ruling on Motion to Compel Arbitration or Dismiss for Forum Non Conveniens or, in the Alternative, to Dismiss for Lack of Personal Jurisdiction or to Transfer, to Dismiss for Failure to State a Claim, and to Strike

John Dlugolecki ("Plaintiff") sued PeopleConnect, Inc. ("PeopleConnect"), PeopleConnect Intermediate LLC, PeopleConnect Holdings, Inc., PCHI Intermediate, LLC and PCHI Parent, Inc. (collectively, "Defendants")[1], asserting three claims for willful copyright infringement in relation to the publication – on or in association with Classmates.com – of yearbook photos of Rachel Meghan Markle that he took and – as to at least some of the photos – for which he owns the registered copyrights. *See, e.g.*, First Amended Complaint for Copyright Infringement and Other Claims ("FAC"), Docket No. 25, ¶¶ 1, 8, 20-31. Defendants now move for various forms of relief, but the Court will consider only one (at least at this time) – the request to compel arbitration.

"A party seeking to compel arbitration has the burden under the [Federal Arbitration Act] to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). This is in recognition of the rule that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (omitting internal quotation marks). Defendants, as the parties seeking to compel arbitration – must prove the existence of an arbitration agreement between themselves and Plaintiff by a preponderance of the evidence. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).

These are "gateway" questions that are typically reserved for a court, instead of an arbitrator, to determine. *See, e.g.*, *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). However, "these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

---

[1] PeopleConnect Intermediate LLC, PeopleConnect Holdings, Inc., PCHI Intermediate, LLC, and PCHI Parent, Inc. will be referred to collectively herein as the "Corporate Parents."

938, 944 (1995).

The preponderance of the evidence demonstrates that Plaintiff has a Classmates.com ("the Website") account he opened in June 2004, and that he had to have agreed to the Website's Terms of Service ("TOS") to open such an account. *See* Declaration of Sarah Howe in Support of Defendants' Motion to Compel Arbitration or Dismiss for Forum Non Conveniens or, in the Alternative, to Dismiss for Lack of Personal Jurisdiction or to Transfer, to Dismiss for Failure to State a Claim, and to Strike ("Howe Decl."), Docket No. 33, ¶¶ 9, 13-14, 18-19 & Exhs. A, I. When Plaintiff created an account, the Website had a disclosure adjacent to the "Sign Up," "Submit," or other registration-submission button stating that by clicking such button, the user was agreeing to the TOS. *See id.* ¶ 19 & Exh. I, at pgs. 5, 8. In addition, the Website's disclosures included a hyperlink to the TOS in blue, underlined font. *See id.* This is sufficient, under the principles this Court recognized in the case law in *Dickey v. Ticketmaster LLC*, No. CV 18-9052-GW-(GJSx), 2019 WL 9096443, at *5 (C.D. Cal. Mar. 12, 2019), to have put any user of the Website on notice of the TOS, and to make those TOS enforceable should the consumer proceed to register an account.

In accepting the TOS, Plaintiff agreed that the TOS could be revised "from time to time," and that such revisions were "effective immediately at the time of posting." *See* Howe Decl., Exh. B, at pg. 2 of 15. The TOS were modified in January 2014 to include, among other things, a mandatory arbitration provision. *See id.* ¶ 20 & Exh. F, § 14(c), at pgs. 6-7 of 8. The 2014 TOS also provided that a customer's "continued use of the Services following notice [of changes] shall constitute your acceptance of all changes, and each use of the Services constitutes your reaffirmation of your acceptance of" the TOS. *See id.*, Exh. F, at pg. 2 of 8. The 2014 TOS were not simply posted to the Website, but all registered members were sent an email specifically alerting them to the inclusion of the arbitration provision, with a summary of it and a link to a "more thorough description." *See id.* ¶ 20 & Exhs. J-K. Though Plaintiff reports having multiple different email addresses "over the years," that many "mass" emails go directly into his "spam"/"junk" folders, and that he has no memory of seeing any such emails from the Website, *see* Declaration of John Dlugolecki ("Dlugolecki Decl."), Docket No. 42, ¶ 13, users of the Website have never been able to opt-out of receiving emails notifying them of updates to the Website's TOS. *See* Howe Decl. ¶ 22. Plaintiff continued to access his account after January 2014. *See id.* ¶ 15 & Exh. A.

2

The TOS were again updated in February 2017 and June 2017.  *See* Howe Decl. ¶¶ 17, 21 & Exhs. G-H.  The updates included that any arbitration would proceed under the American Arbitration Association's Rules.  *See id.*, Exh. G, § 14(c), at pgs. 19-20 of 25; *id.*, Exh. H, § 13(b), at page 20 of 24.  In addition, they again included a notification that "continued use of the Websites or Services following notice" of changes would "constitute your acceptance of all changes."  *See id.*, Exh. G, at pg. 3 of 25; *id.*, Exh. H, at pg. 3 of 24.  Once more, they were published on the Website and emails were sent to members, which again specifically referenced the arbitration provision and provided a link to a more-thorough description of changes.  *See id.* ¶ 21 & Exhs. L-M.

Although Plaintiff contests whether or not he used the Website after these 2017 changes to the TOS, the Court concludes that the preponderance of evidence on the issue indicates that he did.  First, while Defendants present evidence that Plaintiff last logged-into his account in or around September 23, 2014, it also provides evidence that it is possible to browse the Website without logging-in.  *See* Howe Decl. ¶ 15 & Exh. A.  Second, Plaintiff's attorney advised Defendants, in an email, that Plaintiff had visited the Website "on a few occasions in recent years to investigate possible infringements, especially in connection with his then-pending Poppel/ABC litigation."  *See* Declaration of Doug Tilley in Support of Defendants' Motion to Compel Arbitration or Dismiss for Forum Non Conveniens or, in the Alternative, to Dismiss for Lack of Personal Jurisdiction or to Transfer, to Dismiss for Failure to State a Claim, and to Strike ("Tilley Decl."), Docket No. 32, ¶ 3 & Exh. A (Docket No. 32-1).  The referenced "Poppel/ABC litigation" referenced began on May 10, 2018.  *See id.* ¶ 4; *see also Dlugolecki v. Poppel*, No. 2:18-cv-03905-GW (GJSx), Docket No. 1 (filed May 10, 2018).  Third, Plaintiff admits to "personally undert[aking] to visit as many websites as [he] could to look for uses of [his] photos" of Markle beginning in or about early 2018, visiting "dozens" of websites.  *See* Dlugolecki Decl. ¶ 9.  He acknowledges that he "may have" visited the Website "between 2018 and thereafter," but "cannot recall or confirm any particular visit."  *Id.* ¶ 11.  Plaintiff's attempt to change his tune – voiced via his attorney's keyboard – on this point only after it became relevant and important to the question of whether this matter will be resolved in arbitration or in court[2] is unconvincing.

---

[2] Plaintiff attempts, in part, to backtrack by virtue of providing a declaration from his attorney, who now states that the email sentence quoted above "was at best an unsworn, hedged, not first-hand . . . response that was explicitly not presented as evidentiary 'fact' to be relied on."  Declaration of Kenneth P. Norwick, Docket No. 42, ¶ 17.  Whatever might be said of his email statement to Defendants' counsel, Plaintiff's counsel *emphasized* Plaintiff's visit to the

3

The Ninth Circuit has held that incorporation of the rules of the American Arbitration Association ("AAA") into an arbitration agreement, as occurred here in connection with the two 2017 versions of the TOS, clearly and unmistakably delegates the issue of arbitrability (*i.e.*, whether claims fall within the scope of an applicable arbitration provision) to the arbitrator (at least where the parties are sophisticated).  *See, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061-62 (9th Cir. 2018); *Brennan*, 796 F.3d at 1130-31 (holding "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" and specifically indicating that the holding "should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent").  Plaintiff makes no attempt to argue his lack-of-sophistication here.  Moreover, as he acknowledges, this Court has already "side[d] with" those cases holding that sophistication is not a factor in adjudicating the delegation issue.  *See Bloom v. ACT, Inc.*, No. CV 18-6749-GW(SSx), 2018 WL 6163128, *4 (C.D. Cal. Oct. 24, 2018).

Though Plaintiff claims to not even have known about the existence of the AAA (or its rules, or how they might be accessed) prior to this motion, *see* Dlugolecki Decl. ¶ 5, he does not deny the clear reference to the AAA and its rules in the 2017 versions of the TOS.  His lack of awareness/familiarity, therefore, must have resulted from his failure to read the TOS.  That failure does not aid him.  *See, e.g.*, *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014) ("As a general rule, a party cannot avoid the terms of a contract by failing to read them before signing."); *Keen v. IFG Leasing Co.*, 622 P.2d 861, 865(Wash. Ct. App. 1973); *Copeland Planned Futures, Inc. v. Obenchain*, 510 P.2d 654, 659 (Wash. Ct. App. 1973); *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F.Supp.2d 1276, 1285 (W.D. Wash. 2009).  In addition, the Court notes that at least by May 2018, when he was still accessing the Website, he was represented by counsel (the same counsel here).  As such, the Court has serious doubts about Plaintiff's ability to plead lack-of-sophistication even if he were to make any attempt in that regard.

---

Website while a lawsuit filed – by the same counsel – in May 2018 was pending.  The Court finds it odd for counsel to purport to have knowledge about his client's activities, "especially" at a particularly-relevant – for present purposes – time period, and then to subsequently reverse-course, claiming nothing in the statement was true or should be relied-upon.  While Plaintiff's counsel now "adopt[s]," as his own "understanding of th[e] facts," those that are set forth in Plaintiff's own recitation in his declaration of his visits to the Website, *see id.* ¶ 18, for the reasons addressed above, that recitation is not convincing with respect to the question of Plaintiff's activity in connection with the Website.

The Court therefore concludes both that the parties do have an enforceable agreement to arbitrate under the second of the two versions of the TOS that were published in 2017, and that the issue of arbitrability is left to the arbitrator here.

Even if the Court were to conclude that the parties had not clearly and unmistakably delegated the issue of arbitrability to the arbitrator (because of, for instance, some concern about whether Plaintiff would qualify as a "sophisticated" party for this purpose), the effective TOS cover, among other things, claims "arising out of or relating to any aspect of the relationship between us" and "any and all disputes that have arisen or may arise between you and the PeopleConnect entities."[3] *See* Howe Decl., Exh. H, §§ 13-13(a), at pages 18-19 of 24. This is exceedingly broad. Relying on *In re Jiffy Lube Int'l, Inc.*, 847 F.Supp.2d 1253 (S.D. Cal. 2012), Plaintiff briefly argues that the breadth of the scope of arbitrable claims here is unconscionable. Neither the Ninth Circuit nor the Supreme Court have adopted this proposition. Moreover, as the Supreme Court has emphasized over-and-over, particularly in recent years, arbitration is a matter of contract, and arbitration agreements are to be enforced according to their terms. The Court therefore rejects *Jiffy Lube*'s approach of holding such an agreement "unconscionable" simply due to the scope of the claims that are subject to it, as the result of the parties' agreement.[4]

Plaintiff has raised no argument that if PeopleConnect is entitled to compel arbitration here, the Corporate Parents are *not*. As such, the Court will grant Defendants' motion insofar as it seeks to compel arbitration, and in favor of all Defendants. With that result, the Court will not – indeed, cannot – consider any of the other arguments raised in the motion.

Plaintiff also has not taken issue with Defendants' plea that the action be dismissed, as

---

[3] Even the TOS that Plaintiff admits were in force at the time of his last (if the Court looks only to Defendants' records on the point) visit to the Website had an arbitration provision that applied to "all disputes and claims between them" and to "any aspect of the relationship between us." *See* Howe Decl., Exh. F, § 14(c), at pg. 6 of 8.

[4] "The [Federal Arbitration Agreement] provides that any contract to settle a dispute by arbitration shall be valid and enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921 (9th Cir. 2013) (quoting 9 U.S.C. § 2). "Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability." *Id.* With respect to unconscionability, "[u]nder California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Id.* at 922 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 (2000)). Apart from its citation to/brief discussion of *Jiffy Lube*, Plaintiff's unconscionability "argument" – if it can be accurately described as such – is limited to two sentences in two separate footnotes. *See* Docket No. 42, at 18-19 nn.4-5. An argument encompassing that little effort is not a convincing one. In their Reply brief, however, Defendants argue that the issue of unconscionability tied to the scope of the arbitration provision is one that must be decided by the arbitrator. The Court's discussion of the issue of unconscionability here is not intended to preclude the arbitrator from examining the issue anew, if the arbitrator agrees with Defendants on this point.

5

opposed to stayed.  However, the prevailing rule is that "a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).  The Court has not decided the arbitrability question, instead leaving that to the arbitrator.  As such, the Court will stay the action (though if the arbitrator determines all claims raised in the FAC are subject to arbitration, either party may return to the Court and seek a dismissal of this action).  *See* 9 U.S.C. § 3 (providing that where a court is "satisfied that the issue involved in [a] suit or proceeding is referable to arbitration" under a written arbitration agreement, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

       The Court grants Defendants' motion to compel and stays the case pending the decision as to arbitration.